JESSE NOSBAUM, By Her Mother and Next Friend, Monica Harding, Plaintiff-Appellant, v. SUSAN MARTINI *et al.*, Defendants-Appellees.

First District (2nd Division)   No. 1—99—1252

Opinion filed February 15, 2000.

Ronald L. Barnard and Bradley H. Foreman, both of Barnard, Foreman & McCollam, Ltd., of Chicago, for appellant.

William J. Rogers and Krista R. Stine, both of Bollinger, Ruberry & Garvey, of Chicago, for appellees.

JUSTICE GORDON delivered the opinion of the court:

Plaintiff Jesse Nosbaum, a minor, appeals from the circuit court's granting of defendants' motions to dismiss her complaint. In that four-count complaint, Jesse, her mother, Monica Harding (Monica), and her mother's husband, Scott Harding (Scott), alleged medical malpractice and negligent misrepresentation against defendants Susan Martini, Advocate Medical Group (Advocate), and Lutheran General Hospital (Lutheran General). Counts I and II of the complaint are for medical malpractice, and counts III and IV are for negligent misrepresentation. The circuit court granted the defendants' motions to dismiss under section 2—619 of the Illinois Code of Civil Procedure (735 ILCS 5/2—619 (West 1992)). Jesse argues the court erred in finding defendants immune from liability under the Abused and Neglected Child Reporting Act (the Act) (325 ILCS 5/9 (West Supp. 1999)) and in ruling that her complaint did not sufficiently allege liability under an apparent agency theory. Therefore, Jesse contends her medical malpractice claims should not have been dismissed. For the reasons set forth below, we reverse in part, vacate in part and remand for further proceedings.

## BACKGROUND FACTS

The defendants moved for dismissal under sections 2—615 and 2—619 of the Code of Civil Procedure (735 ILCS 5/2—615, 2—619 (West 1992)). In support, they submitted affidavits of Dr. Martini and Lutheran General social worker Kim Seltzer, and a supplemental affidavit of Kim Seltzer. Also attached to their motions to dismiss were Kim Seltzer's written report to the Illinois Department of Children and Family Services (DCFS), Laurence Nosbaum's (Laurence) petition for change of residential custody (filed July 29, 1996) and his affidavit in support, and Laurence's amended petition for change of residential custody (filed October 16, 1996). In response, the plaintiffs submitted an affidavit of Monica Harding. Also attached to the plaintiffs' response to the motions to dismiss were Laurence's petition for temporary change of residential custody (filed July 29, 1996), Dr. Martini's report of her examination of Jesse, and Dr. Martini's (April 3, 1997) letter to Laurence's attorney, Denis J. McKeown. The following facts are undisputed.

Jesse is the daughter of Laurence and Monica, who were husband and wife at the time of Jesse's birth (January 2, 1991). Laurence and Monica were divorced on October 13, 1994. Under that decree, the couple had joint custody of Jesse, with Monica designated as the primary physical custodian. On July 12, 1996, Laurence and his mother, Diane Hagopian, brought Jesse to the Lutheran General emergency room complaining that she suffered from vaginal irritation and suggesting she might have been sexually abused by Monica's husband, Scott. Laurence and Jesse were referred to the child protective services (CPS) team within the hospital.

Dr. Martini was a member of the CPS team, but she was an employee of Advocate, an independent entity that had its offices on the premises of Lutheran General. According to Dr. Martini, Laurence informed her that Jesse said she "played doctor" with her stepfather (Scott). Laurence also said he had noticed Jesse placing objects in and around her genital area and rubbing water close to her vagina and saying "it felt good." Jesse also placed crayons in her three-year-old cousin's vagina while staying at her paternal aunt's house. In addition, she became agitated when it was time to leave her father's house and return to her mother's house. Jesse said she wished her mother would die so she could live with her father.

Dr. Martini examined Jesse for physical signs of sexual abuse and completed a report called a "Child Protective Services Team Evaluation." Using a device called a colposcope, Dr. Martini concluded that the diameter of Jesse's transhymenal opening was 20 or 21 millimeters, which she termed "abnormal." In both her report and her

subsequent affidavit, Dr. Martini said such an opening might indicate sexual abuse or it might result from "digital manipulation" by the child herself. Dr. Martini wrote in her report that she "[s]uggested to father [Laurence] to report [the] case to DCFS" but that "he did not want to." She also wrote that the case was "not reported yet" to DCFS and that Kim Seltzer, a Lutheran General social worker, was "to call DCFS to see if they think [a] report needs to be filed."

Ms. Seltzer also spoke with Laurence on July 12, 1996. Three days later (July 15), she made an oral report to DCFS "[b]ased on Jesse's history given by Mr. Nosbaum." In her subsequent written report to DCFS, submitted on July 22, Ms. Seltzer listed (as evidence of previous suspected abuse) both Laurence's "concerns about Jesse's statements & behavior" and an "[a]bnormal medical exam." Both Ms. Seltzer and Dr. Martini assert in their affidavits that regardless of the results of Dr. Martini's examination, the history reported to them by Laurence meant a report had to be filed with DCFS.

On July 29, 1996, Laurence filed simultaneous petitions for change of residential custody and for temporary change of residential custody, asking that custody of Jesse be transferred to him. The petitions were filed with the circuit court of the nineteenth judicial circuit in Lake County, Illinois. In his petition for change of residential custody, Laurence listed several grounds, including Monica's removal of Jesse from the Chicago area to an "isolated environment" in southern Illinois, Jesse's comment that "she plays doctor with an adult in Southern Illinois," and Jesse's masturbation and apparent "preoccupation with sexual matters." He also noted that Dr. Martini had examined Jesse and found "an abnormal opening of the vaginal area *** that can be consistent in sexual abuse cases," and he attached a copy of Dr. Martini's report. In addition, Laurence noted that Lutheran General had reported the case to DCFS "as suspected child abuse." On August 19, 1996, the court ordered temporary custody of Jesse transferred from Monica to Laurence for 90 days. The court extended that custody arrangement on the following November 8, noting that Jesse could stay with Monica for the Thanksgiving holiday but that her husband, Scott, could not be left alone with Jesse. In January 1997, the court denied Laurence's petition for a further extension of the temporary custody arrangement, finding that he had not sustained his burden of proof. The judge ordered that Jesse's custody arrangement revert to its prior status and that Jesse be returned to Monica. However, the issue of *permanent* change of custody remained pending.

In a letter dated April 3, 1997, Dr. Martini wrote to Laurence's attorney, Denis J. McKeown, informing him that the initial transhymenal diameter was incorrect and that she had amended Jesse's medi-

cal record to reflect the correct diameter of four millimeters, which she said was "in the normal range." Dr. Martini said the error resulted from "confusion of one of the magnifying powers used on the colposcope." In August 1997, following a trial on Laurence's petition for change of custody, the court terminated the joint custody arrangement and awarded sole custody of Jesse to Monica.

Eight months later (April 28, 1998), Jesse, Monica and Scott filed the instant complaint, alleging medical malpractice (counts I and II) and negligent misrepresentation (counts III and IV) against Dr. Martini, Advocate, and Lutheran General. Counts I and III seek damages for Jesse for the mental anguish and loss of companionship of her mother and stepfather that she suffered when she was temporarily removed from her mother's care. Counts II and IV seek similar damages plus attorney fees for Monica and Scott. In the instant appeal, only Jesse is contesting the dismissal of the complaint, and she is appealing only the dismissal of her medical malpractice claims (not her negligent misrepresentation claims).

On January 7, 1999, the trial court dismissed the complaint under section 2—619, holding that "Dr. Martini and the hospital meet the statutory definition of those afforded immunity under the [Abused and Neglected Child Reporting] Act as they were involved in the creation of the report [to DCFS] by providing information to Ms. Seltzer." The court also held that the plaintiffs failed to show the defendants acted in bad faith and that the statute thus "operates to immunize the defendants." In addition, because the complaint did not allege that the plaintiff, Jesse, acted in reliance on the defendants' conduct, the court held that it failed to state a claim against Lutheran General for the apparent agency of Dr. Martini. A motion to reconsider was denied on March 10, 1999. This appeal followed.

## ANALYSIS

I. Standard of Review

In a section 2—619 motion, all well-pleaded allegations in support of the claim are taken as true and all reasonable inferences are drawn in the plaintiff's favor. *Calloway v. Kinkelaar*, 168 Ill. 2d 312, 325, 659 N.E.2d 1322, 1329 (1995); *Prodromos v. Howard Savings Bank*, 295 Ill. App. 3d 470, 474, 692 N.E.2d 707, 710 (1998); *Barber-Colman Co. v. A&K Midwest Insulation Co.*, 236 Ill. App. 3d 1065, 1073, 603 N.E.2d 1215, 1221-22 (1992). A section 2—619 motion should be granted only if no set of facts can be proven that would support the plaintiff's cause of action. *Prodromos*, 295 Ill. App. 3d at 474, 692 N.E.2d at 710.

A section 2—619 motion to dismiss falls between "the completely legal bases of section 2—615 and the completely factual

bases of section 2—1005." *Barber-Colman*, 236 Ill. App. 3d at 1071, 603 N.E.2d at 1221. It provides a means of obtaining summary disposition of both issues of law and of easily proved issues of fact, " 'with a reservation of jury trial as to disputed questions of fact.' " *Kedzie & 103rd Currency Exchange, Inc. v. Hodge*, 156 Ill. 2d 112, 115, 619 N.E.2d 732, 735 (1993), quoting Ill. Ann. Stat., ch. 110, par. 2—619, Historical & Practice Notes, at 662 (Smith-Hurd 1993). Section 2—619(c) states: "If a material and genuine disputed question of fact is raised[,] the court may decide the motion upon the affidavits and evidence offered by the parties, or may deny the motion" 735 ILCS 5/2—619(c) (West 1992). However, the motion should be denied if a material and genuine question of fact exists and the plaintiff has made a jury demand.[1] *Stefan v. State Farm Mutual Automobile Insurance Co.*, 284 Ill. App. 3d 727, 731, 672 N.E.2d 1329, 1332 (1996).

Appellate review of a dismissal under section 2—619 is *de novo*. *Kedzie*, 156 Ill. 2d at 116, 619 N.E.2d at 735; *Lawson v. City of Chicago*, 278 Ill. App. 3d 628, 634, 662 N.E.2d 1377, 1382 (1996). An appeal from such a dismissal is similar to one following a grant of summary judgment. *Kedzie*, 156 Ill. 2d at 116, 619 N.E.2d at 735. "The appellate court must consider whether the existence of a genuine issue of material fact should have precluded the dismissal or, absent such an issue of fact, whether dismissal is proper as a matter of law." *Kedzie*, 156 Ill. 2d at 116-17, 619 N.E.2d at 735.

## II. Immunity Under the Abused and Neglected Child Reporting Act

█ Section 4 of the Abused and Neglected Child Reporting Act (the Act) provides:

> "Any physician *** having reasonable cause to believe a child known to them in their professional or official capacity may be an abused child or a neglected child shall immediately report or cause a report to be made to the Department. Whenever such person is required to report under this Act in his capacity as a member of the staff of a medical or other public or private institution, school, facility or agency, he shall make report immediately to the Department in accordance with the provisions of this Act ***." 325 ILCS 5/4 (West Supp. 1999).

Section 7 of the Act provides:

> "All reports of suspected child abuse or neglect made under this Act shall be made immediately by telephone to the central register *** or in person or by telephone through the nearest Department office." 325 ILCS 5/7 (West Supp. 1999).

---

[1] In the instant case, the defendants made a jury demand, but there is no indication the plaintiffs made one.

Section 9 of the Act provides:

"Any person, institution or agency, under this Act, participating in good faith in the making of a report or referral, or in the investigation of such a report or referral *** shall have immunity from any liability, civil, criminal or that otherwise might result by reason of such actions. For the purpose of any proceedings, civil or criminal, the good faith of any persons required to report or refer, or permitted to report, cases of suspected child abuse or neglect or permitted to refer individuals under this Act or required to disclose information concerning reports of child abuse and neglect *** shall be presumed." 325 ILCS 5/9 (West Supp. 1999).

Jesse argues that because immunity under the Act applies only to liability resulting from participating in the making of a report, as set forth in section 9, defendant Dr. Martini is not protected by that immunity since she did not prepare any report to DCFS. She further contends that since neither Dr. Martini nor anyone else made an *immediate* report to DCFS, Dr. Martini had no reasonable cause to believe abuse had occurred and thus chose not to make a report. Jesse also argues that failure to make an immediate report, as required under sections 4 and 7, is in itself sufficient under the Act to preclude the extension of immunity.

■ The fact that it was Kim Seltzer and not Dr. Martini who made the report to DCFS does not determine the entitlement of Dr. Martini to immunity. Although there are no cases in Illinois construing the relevant portion of section 9, the statute's explicit terms show that the "actions" giving rise to immunity under the Act include "participating" in the making of a report or referral. While Dr. Martini did not herself report the suspected abuse of Jesse to DCFS, her "abnormal medical exam" of Jesse was listed in Kim Seltzer's report (to DCFS) as evidence of suspected abuse. The record here indicates Dr. Martini at least participated in the report to DCFS, so immunity cannot be denied her on the ground that she did not make the specific report.

■ With respect to Jesse's contention that Dr. Martini had no reasonable cause to believe abuse had occurred and thus chose not to make a report, we agree with the defendants that the contention is not supported by the record. In her evaluation of Jesse, Dr. Martini wrote that the "abnormal transhymenal diameter" she observed "can be seen in sexual abuse." She also noted that she suggested to Laurence that he report the case and that Kim Seltzer was to call DCFS to see if a report needed to be filed. In her affidavit, Dr. Martini said "[t]he history of statements and observations given by Mr. Nosbaum gave rise to a reasonable suspicion of child abuse."

■ In addition, though the Act does require that a report be made

"immediately," it imposes no time restriction more specific than that. The record shows that Kim Seltzer made an oral report to DCFS on July 15, 1996, just three days after her interview with Laurence. Moreover, while there are no Illinois cases on point, one of the cases cited by plaintiff (and discussed below) looks at a timeliness argument similar to the one Jesse makes. In *Wilkinson v. Balsam*, 885 F. Supp. 651 (D. Vt. 1995), the plaintiff claimed that immunity did not apply because the defendant failed to report suspected abuse within the 24 hours required by a Vermont statute. *Wilkinson*, 885 F. Supp. at 658. The court responded that the statute's immunity provision "is not limited to those who *timely* report," adding that it "gives immunity to *any person* enumerated in the [statute] (such as a physician) who in good faith makes a report to [the Vermont Department of Social and Rehabilitation Services]." (Emphasis in original.) *Wilkinson*, 885 F. Supp. at 658. The same reasoning applies here. Under section 9 of the Illinois Act, immunity is not conditioned on the reporting's being done immediately.

Jesse next argues that statutory immunity does not apply because her suit arose not from the report to DCFS but from Dr. Martini's negligent examination.

It is apparent that the damages sought here stem from the temporary removal of Jesse from the primary care of her mother (in the custodial hearing before the domestic relations judge in Lake County). That removal resulted from Laurence's petition for change of residential custody. In that petition he listed several grounds, including that Jesse was examined by Dr. Martini, who found "an abnormal opening of the vaginal area *** that can be consistent in sexual abuse cases." Laurence stated in his petition that he was attaching a copy of Dr. Martini's report. The record does not make clear the precise reasons why the court granted temporary custody of Jesse to Laurence. However, the emphasis given Dr. Martini's examination in that petition supports an inference that it may have been the dominant basis for the decision. As the defendants correctly note, Laurence's petition also lists Lutheran General's report to DCFS, but there is no indication he attached a copy of it as he did with Dr. Martini's report.

■ This case therefore raises the apparently novel issue of whether (for purposes of immunity under the Act) a child abuse report should be viewed separately from the examination that preceded it. Both sides here appear to agree there would be no immunity for a doctor who negligently caused harm independent of a DCFS report simply because there was a tangential link to such a report. For example, Dr. Martini and Advocate concede that "[i]f *** Dr. Martini were accused of missing a cancerous tumor of the labia when examining Jesse for

possible abuse," then the statute's immunity "argu[ably]" would not apply. We agree. A physician owes a duty of care and full reportage to her patient, independent of her duty to report suspected child abuse, and we think it unlikely that the Illinois legislature meant to immunize doctors from liability for any medical malpractice simply because it might have a link to a child abuse report. *McMillen v. Carlinville Area Hospital*, 114 Ill. App. 3d 732, 737, 450 N.E.2d 5, 9 (1983) (physician "always under a duty to use due care in the treatment of his patient"); *Nichelson v. Curtis*, 117 Ill. App. 3d 100, 104, 452 N.E.2d 883, 885 (1983).

This case of course presents a different situation from the hypothetical missed-cancer diagnosis. Here there is no physical harm alleged as a result of Dr. Martini's misdiagnosis. In addition, the defendants contend the measurement of Jesse's transhymenal diameter was "an integral part of the evaluation of possible abuse" and thus cannot be considered apart from the abuse report. Even so, a physician has an independent duty to report the results of her findings to her patient, and that duty exists wholly separate and apart from any duty imposed by the Act. *Goldberg v. Ruskin*, 128 Ill. App. 3d 1029, 1040, 471 N.E.2d 530, 537 (1984) (physician-patient relationship creates affirmative duty to disclose facts); *cf. Turner v. Nama*, 294 Ill. App. 3d 19, 33, 689 N.E.2d 303, 313 (1997) (health care provider who receives unfavorable test results is obligated to inform patient of results). The distinction between a doctor's duty to her patient on the one hand and her duty to report suspected abuse on the other is an important one. The instant case might not be the best one to illustrate that distinction, but the issue is raised here nonetheless.

We are not unmindful of the important policy reason underlying the Act's immunity: granting such immunity for liability arising from the reporting of child abuse helps encourage such reporting. However, in the instant case it is clear that no liability should or will flow from any damages caused by the report to DCFS (for which immunity is granted), and there is no reason to extend that immunity to cover the doctor's independent obligation to her own patient where the failure to do so causes damage independent of the DCFS report.

The question of whether statutory immunity applies to liability arising from a medical examination that precedes a child abuse report has not been directly addressed in any previous Illinois decisions. However, that issue has been looked at in other jurisdictions. In *Comstock v. Walsh*, 848 S.W.2d 7 (Mo. Ct. App. 1992), a doctor in Kansas examined a child for suspected sexual abuse and reported her findings to the local police. In a subsequent state proceeding, the noncustodial father's visitation privileges were limited. The father then sued the

doctor and hospital for medical malpractice "in the mistaken diagnosis of sexual abuse" (*Comstock*, 848 S.W.2d at 8), and the suit was dismissed. The appellate court reversed, holding there was no statutory immunity "from liability for malpractice in the examination of the child for indications of sexual abuse and the diagnosis of sexual abuse." *Comstock*, 848 S.W.2d at 9. However, the court based its holding on the doctor's having reported not to the state Division of Family Services (DFS) but to the police. Because there was no report to the DFS, the state's reporting statute (including its immunity provision) did not apply at all. The court did not reach the question of whether the statute granted immunity for both the report and the preceding examination and diagnosis.

That issue was reached in *Wilkinson v. Balsam*, 885 F. Supp. 651 (D. Vt. 1995), where the defendant psychiatrist concluded that a father had sexually abused his son. The psychiatrist urged the boy's mother to report the suspected abuse to the Vermont Department of Social and Rehabilitation Services (SRS), which she did, and the psychiatrist himself called SRS and confirmed the report. He also offered his views to the police. The father was arrested and charged with sexually abusing his son. He later sued, and the psychiatrist moved for summary judgment. The district court denied the motion, noting (in part) that there was evidence the psychiatrist's diagnosis (of sexual abuse) was "the result of gross negligence." *Wilkinson*, 885 F. Supp. at 658. The court added that, "[t]o the extent the plaintiff's damages flow from the flawed diagnosis, independent of the SRS report, [the defendant psychiatrist] cannot benefit from the immunity granted by [the statute]." *Wilkinson*, 885 F. Supp. at 658. The *Wilkinson* court thus distinguished between the diagnosis and the report, and held that immunity did not apply to the diagnosis in that instance.

The decision in *Pryweller v. Cohen*, 282 Ill. App. 3d 899, 668 N.E.2d 1144 (1996), upon which defendants rely, is inapposite. In *Pryweller*, a divorced father filed suit after the defendant reported to DCFS her conclusion that the father had sexually abused his daughter. *Pryweller*, 282 Ill. App. 3d at 901-05, 668 N.E.2d at 1145-48. DCFS made an independent determination that sexual abuse was indicated. *Pryweller*, 282 Ill. App. 3d at 910, 668 N.E.2d at 1151. The father's contact with his children was terminated by court order but was reinstated eight months later. *Pryweller*, 282 Ill. App. 3d at 902, 668 N.E.2d at 1146. DCFS subsequently reversed its determination that sexual abuse was indicated, and the court ultimately held there had been no abuse. *Pryweller*, 282 Ill. App. 3d at 903, 668 N.E.2d at 1146. Nevertheless, the appellate court affirmed the trial court's dismissal of the father's complaint (under section 2—619), holding that the presumption the

defendants acted in good faith was not rebutted and they were thus immune under the Act. *Pryweller*, 282 Ill. App. 3d at 907-12, 668 N.E.2d at 1149-52.

In *Pryweller*, unlike the instant case, the main defendant, Gabriella Cohen, was a child care worker, not a physician. *Pryweller*, 282 Ill. App. 3d at 906, 668 N.E.2d at 1148. Further, the question concerning liability for damages arose strictly from the DCFS report, and the issue was whether the defendants responsible for that report acted in good faith. Here the question is whether there is liability for damages flowing from an independent act of malpractice by the patient's physician, even though the result of that malpractice later found its way into a DCFS report.

While the case of *Poulos v. Lane*, 276 Ill. App. 3d 524, 659 N.E.2d 34 (1995), upon which defendants rely, is closer on its facts to the instant case, it is not dispositive.

In *Poulos*, the defendant physician reported to DCFS that a child she examined for possible sexual abuse had tested positive for gonorrhea of the throat. *Poulos*, 276 Ill. App. 3d at 526, 659 N.E.2d at 35. The physician testified at a subsequent temporary custody hearing that ended with the court ordering the child removed from his parents' custody. *Poulos*, 276 Ill. App. 3d at 527, 659 N.E.2d at 35-36. Several months later, the child was ordered returned to his parents' custody. *Poulos*, 276 Ill. App. 3d at 527, 659 N.E.2d at 36. The plaintiff parents sued, apparently because of doubts about the test's accuracy and whether it was appropriate for identifying sexually abused children. *Poulos*, 276 Ill. App. 3d at 527-28, 530, 659 N.E.2d at 36, 38. The appellate court affirmed the trial court's granting of summary judgment for the defendants, holding that the presumption the defendant doctor acted in good faith (in reporting to DCFS) was not rebutted and she was thus immune under the Act. *Poulos*, 276 Ill. App. 3d at 531-32, 659 N.E.2d at 38-39.

Thus in *Poulos*, as in *Pryweller*, no contention was raised as to a doctor's liability for an independent breach of duty to a patient in rendering a proper diagnosis. The central issue raised is whether the doctor acted in good faith and thus came within the statute's immunity. In this case, we reached the question head-on as to whether liability resulting from the independent negligence of a doctor comes within the umbrella of the immunity provision simply because the result of that malpractice also became a predicate of a DCFS report that followed. We submit that under these circumstances, if it can be shown that the damages claimed resulted directly from the misdiagnosis and not from the DCFS report itself, there is no reason to extend to that independent malpractice the protection of the statute's immunity provision.

III. Apparent Agency

█ Jesse also contends the trial court erred in finding that Dr. Martini was not an apparent agent of Lutheran General. Under Illinois law, a hospital can be held vicariously liable under an apparent agency theory if the plaintiff can show:

> " '(1) the hospital, or its agent, acted in a manner that would lead a reasonable person to conclude that the individual who was alleged to be negligent was an employee or agent of the hospital; (2) where the acts of the agent create the appearance of authority, the plaintiff must also prove that the hospital had knowledge of and acquiesced in them; and (3) the plaintiff acted in reliance upon the conduct of the hospital or its agent, consistent with ordinary care and prudence.' " *Gilbert v. Sycamore Municipal Hospital*, 156 Ill. 2d 511, 525, 622 N.E.2d 788, 795 (1993), quoting *Pamperin v. Trinity Memorial Hospital*, 144 Wis. 2d 188, 208, 423 N.W.2d 848, 856 (1988).

In her complaint, Jesse alleges it was reasonable for Laurence to conclude Dr. Martini (an employee of Advocate) was an employee of Lutheran General. She also alleges that Lutheran General "had knowledge of and acquiesced in the acts of Dr. Martini" and that Laurence justifiably relied on Lutheran General's conduct "in referring him to its Child Protective Services Team" (of which Dr. Martini was a member). Jesse thus contends her complaint meets the reliance requirements for an apparent-agency claim as set out in *Gilbert*.

Lutheran General notes that Laurence is not the plaintiff in the instant suit, and thus contends Jesse did not allege that it was the *plaintiff* who relied on the conduct of the hospital or its agent, as is required under *Gilbert*. Lutheran General also argues that because Laurence is neither the plaintiff nor a party, any claims Jesse makes as to his state of mind are hearsay and improper. Finally, according to Lutheran General, Jesse's complaint alleges Laurence acted on the *results* of Dr. Martini's *examination*, not on his conclusion that there was an agency relationship between Dr. Martini and Lutheran General, as required in an apparent agency claim.

Jesse first argues that, for purposes of the reliance element in *Gilbert*, it makes no difference whether Laurence was the plaintiff or even a party to the suit. She contends it is enough that he is her father and that his reliance was a factor in the decision he made on her behalf. Jesse cites *Chicago Title & Trust Co. v. Sisters of St. Mary*, 264 Ill. App. 3d 913, 637 N.E.2d 543 (1994), where a plaintiff-father alleged that doctors in a hospital's emergency room failed to diagnose spinal meningitis in his minor son, causing brain damage. The emergency room was managed and staffed by an independent contractor,

and the doctors thus were not employees of the hospital. In count II of his complaint, the father alleged an apparent agency theory, claiming he selected the defendant hospital because he thought its doctors would provide good care for his son and that he believed the doctors at the hospital were its employees. The appellate court reversed the trial court's dismissal of the complaint, holding that count II (where the father alleged reliance) satisfied the justifiable reliance element of an apparent agency claim. *Chicago Title*, 264 Ill. App. 3d at 917, 637 N.E.2d at 546.

Lutheran General contends *Chicago Title* is inapplicable because, unlike Laurence, the father there was a *plaintiff* joined in the action and thus met the reliance element (while Laurence did not). We consider that to be a distinction without a difference since under *Chicago Title* the father's reliance was attributed not only to the father but also to the minor son, who was also a plaintiff in the action. The central facts appear to be that there was reliance by those responsible for the infant's care. Otherwise, no infant could ever hope to avail himself of apparent agency since he would be incapable of his own evaluation and reliance.

That rationale is specifically borne out in the case of *Monti v. Silver Cross Hospital*, 262 Ill. App. 3d 503, 637 N.E.2d 427 (1994). In *Monti*, the plaintiff, suffering from a head injury that left her unconscious, was taken by ambulance to the defendant hospital's emergency room. The hospital had no neurosurgeon on duty at the time. Twelve hours later the plaintiff was transferred to a different hospital. She filed suit, and the (initial receiving) hospital moved for summary judgment on the ground that the defendant doctors were independent contractors and not the employees or agents of the hospital. Summary judgment was granted and the plaintiff appealed. The defendants argued on appeal that there was no apparent agency because the plaintiff was unconscious when she was brought to the emergency room and so "did not select the hospital or otherwise rely upon the hospital to supply treating physicians." *Monti*, 262 Ill. App. 3d at 507, 637 N.E.2d at 430. The appellate court reversed, holding there was a triable issue as to apparent agency. The court noted that the actions of those who were responsible for the plaintiff's care (the nonparty emergency medical personnel who selected the hospital)[2] showed an

---

[2]The court also noted that the plaintiff's husband was "present during much of the day" and that he also "relied upon the hospital to provide the *** services she required." *Monti*, 262 Ill. App. 3d at 508, 637 N.E.2d at 430. However, it was the emergency medical personnel whose reliance the court held was central in meeting the reliance requirement.

"implied reliance" on the part of the plaintiff. *Monti*, 262 Ill. App. 3d at 508, 637 N.E.2d at 430.

■ The same reasoning applies to the instant case. If because of her minority Jesse was incapable of relying on Lutheran General, then the reliance of a person responsible for her care (in this case her father) established an "implied reliance" on Jesse's part. Just as in *Monti*, it does not matter that the person who relied was neither a plaintiff nor a party to the suit. Further, *Monti*'s reasoning would appear to apply even more strongly where, as here, the person who relied was the plaintiff's parent, not a person unrelated to her.

The defendants' other two arguments, that the pleadings are insufficient to establish reliance because of hearsay and that reliance is insufficiently developed in the pleadings, do not detain us long. Though Laurence is not a party to the suit, he may still testify at trial, and then his statements would not be hearsay. Nothing prevents plaintiffs here from alleging in their *pleading* that Laurence relied on Lutheran General's conduct. What is important at this stage of the proceeding is that Jesse's complaint sufficiently alleged a claim of apparent agency. That is not to be confused with proof of that claim, established not through hearsay but through the direct testimony of the father. Similarly, an examination of the complaint shows it is based not only on the results of Dr. Martini's examination but also on Laurence's reliance, which as discussed above is sufficient to establish the reliance of the infant in his care.

We therefore reject the trial judge's conclusion that apparent agency was not established by the pleadings.

## CONCLUSION

■ Accordingly, we reverse the trial court's determination with respect to the issue of apparent agency, and we vacate and remand to the trial court the immunity issue for clarification and reevaluation. If it is determined that the damages claimed flow independently from defendant Martini's misdiagnosis and not from the incorporation of that misdiagnosis into the DCFS report, then the trial court's dismissal of this action shall stand as reversed as well as vacated. If on the other hand the court determines that the damages resulted from the DCFS report and not solely from the independent negligence of the doctor, then the trial court's dismissal of this action shall be reinstated. Since there was no jury demand by the plaintiff in this case, the court is free to weigh the evidence. See section 2—619(c) discussed above. However, while no evidentiary hearing apparently was requested and none given, we would urge that there be such an evidentiary hearing on remand. See 4 R. Michael, Illinois Practice § 41.8, at 336 (1989):

"In determining [a section 2—619] motion on the merits *** the trial court may not simply resolve the motion on the bases of the affidavits and similar material submitted in the initial stage of the hearing on the motion. Rather an evidentiary hearing must be held, and the unresolved issue or issues of fact must be determined on the basis of a preponderance of the evidence."

Reversed in part, vacated in part and remanded for further proceedings.

McNULTY and McBRIDE, JJ., concur.