[Cite as *Dunkle v. Children's Hosp. Med. Ctr. of Akron*, 2013-Ohio-5555.]

| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
|---|---|---|---|
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | | |

| | | |
|---|---|---|
| LEE-ANN DUNKLE, et al. | | C.A. No.    26612 |
| Appellants | | |
| v. | | APPEAL FROM JUDGMENT ENTERED IN THE |
| CHILDREN'S HOSPITAL MEDICAL CENTER OF AKRON, et al. | | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO CASE No.    CV 2010 12 8294 |
| Appellees | | |

DECISION AND JOURNAL ENTRY

Dated: December 18, 2013

WHITMORE, Judge.

{¶1}   Plaintiff-Appellants, Lee-Ann and Daniel Dunkle and Monica and Nathaniel Humrighouse (collectively, "the Parents"), appeal from the trial court's granting of summary judgment in favor of Defendant-Appellees, Children's Hospital Medical Center of Akron, Children's Hospital Physician's Associates, and R. Daryl Steiner, D.O.  We affirm.

I

**The Dunkles**

{¶2}   Lee-Ann and Daniel Dunkle have two daughters together.  The youngest, R.D., was born on April 25, 2006.  At that time, B.D., R.D.'s sister, was three years old.  On Friday, July 14, 2006, the family was preparing their camper for a weekend trip.  Daniel Dunkle put R.D. in her car seat and placed the car seat on top of the dining table inside the camper.  At some point, Daniel stepped outside of the camper to talk to Lee-Ann.  After hearing a loud thud, the Dunkles ran back into the camper and saw B.D. picking up R.D. from the floor.  It appeared B.D.

had pulled the car seat off the table causing it and R.D. to tumble to the ground. R.D. had a mark on her head and was crying, but Lee-Ann was able to console her within a few minutes. Daniel placed a call to the pediatrician and was told that she was probably fine, but to take her to the hospital if they were concerned. The Dunkles decided to take R.D. to Akron Children's Hospital for an examination.

{¶3} At the hospital, a CAT scan revealed bleeding in R.D.'s brain. The CT images showed both old and new blood. It was estimated that the old blood was about ten to fourteen days old. Because there was no explanation for the older injury, Dr. R. Daryl Steiner, director of the CARE center, was brought in to evaluate the possibility of abuse. Dr. Steiner concluded that the Dunkles' story did not account for some of R.D.'s injuries. Specifically, Dr. Steiner concluded that the older subdural hematoma and the retinal hemorrhages in both eyes were "consistent with the type of injuries seen in a shaken baby syndrome." Dr. Steiner made a report of suspected abuse to Children's Services, and R.D. was removed from the Dunkles' custody. In November, the juvenile court ruled that the State had not proven that R.D. was abused and returned custody to the Dunkles.

**The Humrighouses**

{¶4} Nathaniel and Monica Humrighouse, both nurses, gave birth to their first son, T.H., in the spring of 2006. On the evening of June 28, 2006, Nathaniel was at home caring for T.H. and Monica was at work. Nathaniel explained that he was holding T.H. above his head when T.H. threw his head forward. Nathaniel lost his grip and their two heads collided. Nathaniel called Monica at work concerned because T.H.'s eye was discolored from the impact. They decided to bring T.H. into the hospital for an examination.

{¶5} At the hospital, a CAT scan revealed T.H. had bleeding in the brain. Dr. Steiner was consulted to determine if there was a possibility of abuse. Dr. Steiner concluded that the "extent and severity of [T.H.'s] injuries were not congruent with the history that was given by [Nathaniel]." According to Dr. Steiner, the extensive bleeding seen on both sides of T.H.'s brain was not consistent with the "single unilateral impact" described. Dr. Steiner reported the suspected abuse to Children's Services and Nathaniel agreed to have no contact with T.H. while an investigation was conducted. Nathaniel was later permitted to have supervised visits. At some point, a criminal case was filed against Nathaniel, but it was dismissed after a suppression hearing. According to Monica, Nathaniel spent seven months separated from the family.

**The Lawsuit**

{¶6} In June 2007, the Parents filed a complaint against Children's Hospital Medical Center of Akron, Children's Hospital Physician Associates, and Dr. R. Daryl Steiner, D.O. (collectively, "Appellees"). The case was voluntarily dismissed in October 2010 and re-filed in December 2010. In the re-filed complaint, the Parents alleged (1) medical malpractice, (2) loss of consortium, (3) intentional infliction of emotional distress, (4) negligent infliction of emotional distress, (5) defamation, (6) malicious prosecution, and (7) a claim under 42 U.S.C. § 1983.[1]

{¶7} Appellees filed a motion for summary judgment on all claims arguing that they are immune under R.C. 2151.421(G). The Parents filed a memorandum in opposition. The court granted Appellees' motion, and the Parents now appeal, raising four assignments of error for our review.

---

[1] The Parents make no argument on appeal regarding their §1983 action. Therefore, we limit our review to their state law claims and the arguments raised.

II

Assignment of Error Number One

ORC § 2151.421 DOES NOT PROVIDE DR. STEINER WITH ABSOLUTE STATUTORY IMMUNITY FOR HIS PARTICIPATION IN THE MEDINA AND STARK COUNTY JUDICIAL PROCEEDINGS[.]

{¶8} In their first assignment of error, the Parents argue that the court erred in finding that all of Dr. Steiner's activities were entitled to absolute immunity under R.C. 2151.421.

{¶9} Pursuant to Civ.R. 56(C), summary judgment is proper if:

(1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.

*Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327 (1977). This Court reviews a trial court's decision to grant a motion for summary judgment de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996).

{¶10} The party moving for summary judgment bears the initial burden of informing the trial court of the basis for the motion and pointing to parts of the record that show the absence of a genuine issue of material fact. *Dresher v. Burt*, 75 Ohio St.3d 280, 292-293 (1996). Once this burden is satisfied, the non-moving party bears the burden of offering specific facts to show a genuine issue for trial. *Id.* at 293.

{¶11} R.C. 2151.421, in relevant part, provides:

(A)(1)(a) No person described in division (A)(1)(b) of this section who is acting in an official or professional capacity and knows, or has reasonable cause to suspect based on facts that would cause a reasonable person in a similar position to suspect, that a child under eighteen years of age * * * has suffered * * * any physical or mental wound, injury, disability, or condition of a nature that reasonably indicates abuse or neglect of the child shall fail to immediately report that knowledge or reasonable cause to suspect to the entity or persons specified in this division. * * *

(A)(1)(b) Division (A)(1)(a) of this section applies to any person who is a[] * * * physician * * *.

* * *

(B) Anyone who knows, or has reasonable cause to suspect based on facts that would cause a reasonable person in similar circumstances to suspect, that a child under eighteen years of age * * * has suffered or faces a threat of suffering any physical or mental wound, injury, disability, or other condition of a nature that reasonably indicates abuse or neglect of the child may report or cause reports to be made of that knowledge or reasonable cause to suspect to the entity or persons specified in this division. * * *

* * *

(G)(1)(a) * * * [A]nyone or any hospital, institution, school, health department, or agency participating in the making of reports under division (A) of this section, anyone or any hospital, institution, school, health department, or agency participating in good faith in the making of reports under division (B) of this section, and anyone participating in good faith in a judicial proceeding resulting from the reports, shall be immune from any civil or criminal liability for injury, death, or loss to person or property that otherwise might be incurred or imposed as a result of the making of the reports or the participation in the judicial proceeding.

The statute distinguishes between mandatory reporters, who are covered under section (A), and non-mandatory reporters, who are covered under section (B). Mandatory reporters must report suspected child abuse and are entitled to absolute immunity from liability for their participation in the making of a report of abuse. R.C. 2151.421(G)(1)(a). In addition to absolute immunity for the making of the report, mandatory reporters are entitled to qualified immunity for their participation in a judicial proceeding. *Id.* The issue then is the distinction between participation in the making of reports and the participation in a judicial proceeding resulting from the reports.

**Making of the Report**

{¶12} The Parents do not dispute that Dr. Steiner is a mandatory reporter and is entitled to absolute immunity under the statute for reporting suspected abuse. Courts have held that a mandatory reporter is entitled to absolute immunity for the reporting of abuse, even if the report

is done in bad faith. *See Myers v. Steiner*, 9th Dist. Summit No. 25166, 2011-Ohio-576, ¶ 13; *Workman v. Cleveland Clinic Foundation*, 8th Dist. Cuyahoga No. 93509, 2010-Ohio-1756, ¶ 19; *Gersper v. Ashtabula County Children's Services*, 11th Dist. Ashtabula No. 88-A-1420, 1990 WL 36563, *2 (Mar. 30, 1990); *Criswell v. Brentwood Hosp.*, 49 Ohio App.3d 163, 165 (8th Dist.1989). In addition to the reporting of suspected abuse to a children's services agency, a mandatory reporter is entitled to absolute immunity for his or her written report. R.C. 2151.421(G)(1)(a), (C) (report of suspected abuse "shall be made forthwith either by telephone or in person and shall be followed by a written report, if requested by the receiving agency or officer").

**Judicial Proceeding**

{¶13} With regard to mandatory reporters, the statute distinguishes between the participation in the making of a report of suspected abuse and the participation in judicial proceedings that result from the reporting of suspected abuse. *See* R.C. 2151.421(G)(1)(a). The Parents argue that the court erred when it found Dr. Steiner was entitled to absolute immunity for his participation in judicial proceedings. The Parents do not clearly articulate which of Dr. Steiner's actions should be considered to be participation in judicial proceedings, but it appears they include Dr. Steiner's depositions, affidavits, and his meetings with prosecutors and law enforcement. A review of the record reflects that these actions were related to the various judicial proceedings and not to the making of the report of suspected abuse to Children's Services. Specifically, these actions were related to a juvenile court hearing to determine if R.D. was abused and to the criminal trial of Mr. Humrighouse in the Stark County Court of Common Pleas for the alleged abuse of T.H.

{¶14} The statute does not provide a mandatory reporter with absolute immunity for his or her participation in a judicial proceeding. Instead, the statute requires a good faith participation in judicial proceedings. *Id*. While it seems that the trial court may have misconstrued this Court's holding in *Myers v. Steiner*, we conclude that any error is harmless.

{¶15} In *Myers*, we recognized that "[a] statement made in a judicial proceeding enjoys an absolute privilege against a defamation action as long as the alleged defamatory statement is reasonably related to the proceeding in which it appears." *Myers*, 2011-Ohio-576, at ¶ 15, quoting *Hecht v. Levin*, 66 Ohio St.3d 458, 460 (1993). This privilege is separate and apart from the statutory privilege in R.C. 2151.421(G). The only testimony of Dr. Steiner's that is in the record for our review are his two depositions and a partial transcript of his testimony at Mr. Humrighouse's suppression hearing. Our review of these transcripts shows that Dr. Steiner's statements were solely related to the relative proceedings. Therefore, Dr. Steiner was entitled to absolute immunity against the claim of defamation. Because Dr. Steiner had absolute immunity against defamation, the court did not err in granting summary judgment on that claim.

{¶16} The trial court incorrectly found that this Court in *Myers* "specifically held that the immunity provided under R.C. 2151.421 applied not only to the doctor's initial report of the suspected abuse, but also to the doctor's testimony in court." What we actually held was that the doctor was entitled to absolute immunity for what he had written in his report to Children's Services and that Ms. Myers had failed to present any evidence that the doctor had testified in-court about his diagnosis, which formed the basis of Myers' medical malpractice claim. *Myers*, 2011-Ohio-576, at ¶ 25. Because there was no in court testimony, we did not conduct a review of good faith.

**{¶17}** Conversely, in reviewing the granting of summary judgment on Myers' fraud claim, we concluded that Myers had "failed to establish that genuine issues of material fact exist[ed] regarding whether Dr. Steiner testified in good faith at the custody proceeding." *Id.* at ¶ 22. Therefore, we affirmed the granting of summary judgment in favor of Dr. Steiner. *Id.*

**a. Good Faith**

**{¶18}** R.C. 2151.421(G)(1)(a) provides that "anyone participating in good faith in a judicial proceeding resulting from the reports, shall be immune from civil or criminal liability for injury, death, or loss to person or property that otherwise might be incurred or imposed as a result of the making of the reports or the participation in the judicial proceeding." Thus, to enjoy immunity for participation in judicial proceedings, the person must participate in good faith. This requirement is applicable to both mandatory and non-mandatory reporters.

> The Ohio Supreme Court has described bad faith as "a general and somewhat indefinite term. It has no constricted meaning. It cannot be defined with exactness. It is not simply bad judgment. It is not merely negligence. It imports a dishonest purpose or some moral obliquity. It implies conscious doing of wrong. It means a breach of a known duty through some motive of interest or ill will. It partakes of the nature of fraud * * *. It means with actual intent to mislead or deceive another."

*Id.* at ¶ 17, quoting *State ex rel. Bardwell v. Cuyahoga County Bd. of Comm'rs*, 127 Ohio St.3d 202, 2010-Ohio-5073, ¶ 8.

**{¶19}** Here, the trial court found that there was no evidence that Dr. Steiner acted in bad faith. Specifically, the trial court found that (1) "there ha[d] been no evidence that Dr. Steiner knowingly passed along false information" regarding the children; (2) "[a]ny information Dr. Steiner reported was derived from [his] consultation with treating physicians or licensed social workers and [his] own examination and review"; (3) "the Dunkles [ ] acknowledged that Dr. Steiner acted in [R.D.'s] best interest and not in bad faith"; and (4) "the Humrighouses similarly

acknowledge[d] that they ha[d] no reason to suspect that Dr. Steiner acted in bad faith or that Dr. Steiner was not, in his opinion, acting in [T.H.'s] best interest."

{¶20} Dr. Steiner was deposed in October 2006 and in October 2010. The Parents argue that "[his] own testimony contradicts the possibility that [R.D.'s] injury was caused by shaking." Essentially, the Parents assert that Dr. Steiner's admission in his deposition that R.D.'s older hemorrhage was chronic and not subacute proved that the prior injury was not caused by shaking.[2] However, Dr. Steiner clarified that "[t]he important distinction [ ] is that there are two separate events, one acute, the other older. Being subacute or chronic not only goes to how old it is, but also goes to the severity of the injury in deciding what it takes to cause a chronic subdural hemorrhage. So it still leaves us with the dilemma that we have a second injury that has occurred and resulted in older blood that has accumulated because of that injury." Further, Dr. Steiner testified that R.D.'s bilateral retinal hemorrhages were not explained by the fall from the dining table. Because R.D. had clearly suffered a prior brain injury and retinal hemorrhages in both eyes and the Dunkles were unable to explain the cause of those injuries, Dr. Steiner suspected abuse.

{¶21} Dr. Steiner opined in his affidavit that the injuries suffered by T.H. were inconsistent with Nathaniel's account of the accident. According to Dr. Steiner, T.H. suffered bleeding on both sides of his brain and the extensive injury was unlikely from the colliding of their heads as described.

---

[2] According to Dr. Steiner's deposition, chronic subdural hematomas are only associated with bleeding inside hygromas. Hygromas occur when there is a "traumatic tearing of the subarachnoid space," an associated low-pressure situation in the brain, "a subdural form[s], and then [the] cerebral spinal fluid leak[s] into the subdural space." If a hygroma does not develop the subdural hematoma would be classified as either an acute or subacute hematoma, depending on how old the injury is. Acute hematomas are a few days old or less.

{¶22} Dr. Ronald Uscinski, a licensed neurosurgeon in the State of Virginia, submitted an affidavit for both R.D. and T.H. In both affidavits, Uscinski concluded that "based upon [his] education, experience and research there is no theory accepted by the scientific/medical community which would support the opinion that [the children's] injuries could only have been caused by either abusive force trauma or by shaking." Dr. Uscinski further stated that Dr. Steiner's diagnosis was "a departure from the applicable standard of care" and was done "in reckless disregard of all of the relevant facts." Dr. Uscinski opined that the children's injuries were caused during birth.

{¶23} Notably, Dr. Uscinski does not allege that the children's injuries could not have been caused by abusive force or by shaking. He merely concludes that there may be other explanations and offers traumatic births as one such explanation. In his affidavits, Dr. Uscinski asserts that he reviewed the labor and delivery records for both R.D. and T.H., but he fails to reference those records in any way or explain how these records support his conclusion that the children suffered injuries during birth. In fact, both the Dunkles and the Humrighouses testified that no forceps or other instruments were used during delivery. Moreover, the Dunkles and the Humrighouses testified that they had no reason to believe that Dr. Steiner acted in any way other than what was in the best interest of R.D. and T.H. A careful review of the record does not support a finding that Dr. Steiner acted in bad faith in his depositions, affidavits, or his meeting with the prosecutor and law enforcement. Because there is no genuine issue of material fact as to whether Dr. Steiner acted in good faith in his participation in judicial proceedings, he was entitled to immunity under R.C. 2151.421(G)(1)(a). Because Dr. Steiner was entitled to immunity, we conclude that the court did not err in granting Appellees' motion for summary judgment. The Parents' first assignment of error is overruled.

<u>Assignment of Error Number Two</u>

ANY IMMUNITY PROVIDED BY ORC § 2151.421 DOES NOT EXTEND TO CLAIMS OF MEDICAL MALPRACTICE[.]

<u>Assignment of Error Number Three</u>

THE TRIAL COURT INCORRECTLY DETERMINED THAT THERE WAS NO DISPUTED ISSUE OF FACT RELATED TO THE INJURIES OF [R.D] OR [T.H.]

**{¶24}** In their second and third assignments of error, the Parents argue that the court erred in finding that medical malpractice claims are precluded by R.C. 2151.421 and that there was no genuine issue of material fact as to whether the children suffered injuries.

**{¶25}** Because these assignments of error are also related to the granting of summary judgment, we incorporate the standard of review set forth above.

**{¶26}** "To succeed on a medical malpractice claim, a plaintiff must prove that the medical treatment rendered by [the] defendant fell below the recognized standard of care, and this negligence proximately caused injury to the patient." *Ramadan v. MetroHealth Med. Ctr.*, 8th Dist. Cuyahoga No. 93981, 2011-Ohio-67, ¶ 40, citing *Bruni v. Tatsumi*, 46 Ohio St.2d 127, 131-132 (1976). The Parents assert that because of Dr. Steiner's misdiagnosis of abuse the children suffered injuries when they were separated from their parents. However, this claim of injury does not arise out of deficient medical treatment.

**{¶27}** Dr. Steiner was not the treating physician, and the Parents make no argument that their children received substandard medical treatment while in the hospital. Instead, the alleged injuries arose solely from the separation of the children from the parents. Further, Dr. Steiner did not remove the children from the Parents. The juvenile court removed R.D. from the Dunkles' custody and Mr. Humrighouse consented to having no contact with T.H. while an investigation was conducted.

{¶28} Dr. Steiner was required by statute to report suspected abuse to Children's Services. R.C. 2151.421(A)(1)(a). He has absolute immunity for any injury that arises out of making the report, even if that report was made in bad faith. *Myers*, 2011-Ohio-576, at ¶ 13; R.C. 2151.421(G)(1)(a). Assuming arguendo that the Parents have sufficiently asserted an injury based on the separation, this injury arises out of the making of the report and Dr. Steiner has absolute immunity for this claim.[3] *Myers* at ¶ 13; R.C. 2151.421(G)(1)(a).

{¶29} Because the alleged harm was related to the reporting of the suspected abuse, the court did not err in finding Dr. Steiner was entitled to absolute immunity under R.C. 2151.421(G)(1)(a). As such, the court did not err in granting Appellees' motion for summary judgment on the medical malpractice claim. The Parents' second assignment of error is overruled.

{¶30} Because we have concluded that Dr. Steiner was entitled to absolute immunity for the medical malpractice claim, the Parents' third assignment of error is moot, and we decline to address it. *See* App.R. 12(A)(1)(c).

Assignment of Error Number Four

THE LAW OF THE CASE AND RES JUDICATA DOCTRINES PRECLUDED
THE TRIAL COURT'S RULING ON SUMMARY JUDGMENT[.]

{¶31} In their fourth assignment of error, the Parents argue that the court erred by granting Appellees' motion for summary judgment because the court had previously denied their motion. We disagree.

---

[3] We make no determination about whether a medical malpractice claim may be maintained against a doctor if the child suffers an injury directly related to substandard medical treatment. These are not the facts presented in this case.

**{¶32}** The Parents first filed their claims in 2007. After some discovery, Appellees filed a motion for summary judgment. The trial court denied the motion in August 2008. In October 2010, the Parents voluntarily dismissed their claims and re-filed their case in December 2010. The parties continued discovery. In March 2012, Appellees filed another motion for summary judgment, which the court granted.

**{¶33}** The Parents now argue that the trial court erred by not adhering to the first order denying the motion for summary judgment. Specifically, the Parents argue res judicata and the law of the case doctrine prevent the re-litigation of the issues.

**{¶34}** A court's decision to deny a motion for summary judgment is an interlocutory order and may be revised. *Minnick v. Lee*, 6th Dist. Lucas No. L-98-1221, 1999 WL 63663, *3-4 (Feb. 12, 1999), citing *Peters v. Ashtabula Metro. Hous. Auth.*, 89 Ohio App.3d 458, 463 (11th Dist.1993) ("[D]ue to the interlocutory nature of a denial of a motion for summary judgment, a trial judge has the authority to sua sponte vacate, revise or modify this prior denial."). Moreover, res judicata and the law of the case doctrine require a final order. *See Grava v. Parkman Twp.*, 73 Ohio St.3d 379 (1995), syllabus ("A valid, final judgment rendered upon the merits bars all subsequent actions based upon any claim arising out of the transaction or occurrence that was the subject matter of the previous action."). *See also Denuit v. Ohio St. Bd. of Pharmacy*, 4th Dist. Jackson Nos. 11CA11 & 11CA12, 2013-Ohio-2484, ¶ 19, quoting *Frazier v. Rodgers Builders*, 8th Dist. Cuyahoga No. 91987, 2010-Ohio-3058, ¶ 64 ("[T]he law of the case applies only to final orders and not to interlocutory orders that are subject to the trial court's reconsideration.").

**{¶35}** The Parents' fourth assignment of error is overruled.

III

**{¶36}** The Parents' first, second, and fourth assignments of error are overruled. Their third assignment of error is moot. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellants.

BETH WHITMORE
FOR THE COURT

MOORE, P. J.
CONCURS.

CARR, J.
CONCURRING IN JUDGMENT ONLY.

**{¶37}** I agree fully with the majority's resolution of the fourth assignment of error.

**{¶38}** I concur in judgment only with respect to the Parents' second and third assignments of error. While I agree that the Parents cannot prevail on their claims for medical malpractice, I would not so hold on the basis of absolute immunity.

**{¶39}** As an initial matter, I would interpret the element of "medical treatment" in a claim for medical malpractice more broadly to include medical diagnosis. Clearly, an erroneous diagnosis, on which any treatment would be premised or foreclosed, could be the proximate cause of injury to a patient. As I wrote in my dissent in *Myers v. Steiner*, 9th Dist. Summit No. 25166, 2011-Ohio-576, ¶ 37 (Carr, J., dissenting), "there is some authority for rejecting a finding of blanket immunity in a medical malpractice claim when damages arise from a negligent misdiagnosis rather than a report to Children Services." *Id.*, citing *Harding v. Martini*, 312 Ill.App.3d 108 (2000). In this case, however, I concur in the majority's judgment, albeit not its reasoning, because the Parents did not allege, let alone present evidence, that they suffered damages outside the scope Dr. Steiner's report, an act for which the doctor enjoys absolute immunity. *See Myers* at ¶ 27, citing R.C. 2151.421(G)(1).

**{¶40}** I find the reasoning in *Martini, supra*, compelling. There, the Illinois court distinguished between a physician's incorrect diagnosis of abuse in a report mandated by the duty imposed upon the physician, and an incorrect diagnosis which has a detrimental effect on a patient's health. In the first situation, the physician enjoys absolute immunity. In the second, the Illinois court concluded that "it [is] unlikely that the [legislature] meant to immunize doctors from liability for any medical malpractice simply because it might have a link to a child abuse

report. *Id.* at 117. The *Martini* court, therefore, recognized that a doctor would have immunity from liability for any harm arising solely from the reporting of child abuse because the grant of immunity meets the important public interest in encouraging mandatory reporters, i.e., those with the knowledge and skill to recognize abuse, to report suspected abuse. *Id.*

**{¶41}** I agree with this reasoning. Had the Parents alleged harm or damages other than those that arose solely out of Dr. Steiner's report, I would conclude that their claims would not be foreclosed on the basis of immunity. However, the Parents alleged only that they suffered harm because of their children's removals from their homes. Such damages arose solely out of the doctor's report. Accordingly, I agree that the trial court did not err by granting summary judgment in favor of Dr. Steiner.

**{¶42}** I further disagree with the majority's assertion relative to the first assignment of error that the trial court misinterpreted this Court's holding in *Myers*. I believe that the trial court properly recognized and applied the *qualified* immunity applicable to a doctor's participation in judicial proceedings. The trial court did not find that Dr. Steiner had absolute immunity. Rather, it parsed out the type of immunity applicable to a doctor's testimony and conducted a good faith analysis in regard to Dr. Steiner's in-court testimony.

APPEARANCES:

WILLIAM T. WHITAKER and ANDREA L. WHITAKER, Attorneys at Law, for Appellants.

ROCCO D. POTENZA and GREGORY T. ROSSI, Attorneys at Law, for Appellees.