STEVE POULOS *et al.*, Plaintiffs-Appellants, v. LYNDA LANE *et al.*, Defendants-Appellees.

First District (1st Division)    No. 1—93—4187

Opinion filed November 27, 1995.

Paul Bradley and Erika Cunliff, both of Chicago, for appellants.

Hinshaw & Culbertson, of Chicago (Stanley J. Donaldson, of counsel), for appellees.

PRESIDING JUSTICE CAMPBELL delivered the opinion of the court:

Plaintiffs, Steve Poulos (Steve), Katherine Poulos (Katherine), and Daniel Poulos (Daniel), by his parents and guardians Steve and Katherine, brought an action in negligence, fraud, conspiracy, and breach of contract against defendants Dr. Lynda Lane, Commonwealth Medical Associates, S.C. (CMA), and Doctors Office Laboratory, Inc. (DOL), seeking damages in connection with Dr. Lane's testimony at a hearing for the adjudication of the wardship of Daniel. On November 5, 1993, the trial court entered summary judgment in

favor of Dr. Lane and CMA. On appeal, plaintiffs contend that the trial court erred in entering summary judgment in favor of Dr. Lane and CMA on the grounds that Dr. Lane is immune from liability for reporting potential child abuse to the Illinois Department of Children and Family Services (DCFS).[1] For the following reasons, we affirm the judgment of the trial court.

The record reveals the following relevant facts. On December 29, 1988, a DCFS social worker informed the plaintiffs that a former foster child had made allegations that when he lived with plaintiffs, Steve sexually abused him. The DCFS social worker advised plaintiffs that they were being investigated and that they must have their own two-year-old child, Daniel, evaluated for evidence of sexual abuse.

That same day, plaintiffs retained attorney Stephen Komie (Komie) to represent them. Katherine informed Komie that DCFS wanted Daniel admitted to Mt. Sinai Hospital or La Rabida Hospital to be evaluated for sexual abuse. Katherine further informed Komie that DCFS would not accept an outpatient medical evaluation performed by the plaintiffs' own pediatrician. Komie recommended that plaintiffs take Daniel to Dr. Lane, whom he described as an expert in the field of the sexual abuse of children.

Subsequently, Dr. Lane conducted a physical examination of Daniel, taking cultures from Daniel's rectum, throat and penis. Dr. Lane had the cultures delivered to DOL for evaluation. Dr. Lane then wrote a report of her examination which stated that Daniel was a healthy, normal child who showed no signs of sexual abuse. Plaintiffs paid Dr. Lane $600 for her services, at the rate of $150 per hour.

On December 31, 1988, a DOL employee wrote a report stating that Daniel's throat culture tested positive for gonorrhea. On January 3, 1989, Dr. Lane learned of the laboratory report, telephoned Komie to notify him of the positive test result, and later advised Steve of the test result by telephone. Dr. Lane then wrote a letter to plaintiffs verifying her conversation with Steve, stating her intent to confirm the test result, and requesting that she reculture Daniel, and treat him if the retest was positive. Later that evening, Dr. Lane reported the test result to the DCFS Child Abuse Hotline.

On January 5, 1989, Dr. Lane informed a DCFS investigator that Daniel's throat culture was positive for gonorrhea of the throat. The investigator filed a report with the DCFS, and the DCFS notified the office of the Cook County State's Attorney that Daniel was infected with gonorrhea.

---

[1]DOL is not a party to this appeal.

A petition for adjudication of Daniel's wardship was subsequently filed in the juvenile division of the circuit court of Cook County. The petition alleged that Daniel was sexually abused based on Lane's diagnosis that Daniel was infected with gonorrhea.

On January 18, 1989, a temporary custody hearing commenced before Judge R. Morgan Hamilton to determine whether Daniel should be removed from his parents' custody pending trial on the petition of wardship. Dr. Lane testified pursuant to plaintiffs' subpoena that at the time she examined Daniel, he was $2^1/2$ years old. She took a physical and social history and performed three cultures, checking Daniel for various sexually transmitted diseases. Dr. Lane followed standard procedures in preserving a specimen for gonorrhea. Dr. Lane then instructed a nurse to take the specimen to DOL, which is located in the building in which she practices.

Dr. Lane testified that she received the test results on January 3, 1989, revealing a positive culture for gonorrhea from Daniel's throat. Dr. Lane called plaintiffs, but failed to reach them. Dr. Lane then called Komie's office and told him the results of the test and asked Komie where and when she could locate the plaintiffs. Komie told Dr. Lane that the plaintiffs would be in his office that day and that she could talk to them there. That afternoon, Dr. Lane received a telephone call from Steve and she told him the results of the culture.

Dr. Lane testified that it is difficult to find a positive gonorrhea culture, because it has a high false negative rate. She stated that 50% to 60% of the time she treats a patient for gonorrhea even if the test is negative. Dr. Lane stated that a positive result of a test for gonorrhea is accurate 99.3% of the time.

Dr. Lane testified that gonorrhea is absolutely a sexually transmitted disease. Based on her examination of Daniel, she felt that he was a healthy child, but stated: "When I received the results of the culture, my mind changed dramatically." Dr. Lane then called the DCFS hotline because she strongly felt that Daniel had been sexually abused.

At the conclusion of the temporary custody hearing, the trial court ordered Daniel removed from plaintiffs' home and placed in a foster home. Daniel remained in foster care for 11 months.

In December 1989, following a trial on a petition for adjudication of wardship, the court returned Daniel to the custody of the plaintiffs. The transcript of the full custody hearing is not included in the record on appeal.

Plaintiffs filed their original complaint seeking damages against defendants on November 30, 1990. Plaintiffs' fifth amended complaint, filed on September 27, 1993, included allegations against Dr.

Lane, CMA, and DOL for negligence, conspiracy to commit fraud, fraud, and breach of contract.

At her discovery deposition taken by plaintiffs on June 23, 1993, Dr. Lane testified that prior to her involvement in the plaintiffs' case, she previously testified as an expert in two sexual child abuse cases at the request of attorney Komie. One of the other cases was a licensure proceeding related to the high-profile case against day-care-center owner Sandra Fabiano in 1988. Dr. Lane did not testify at Fabiano's trial in 1990.

Dr. Lane stated that after examining Daniel, she sent the specimens to DOL for gonorrhea cultures, informing DOL that Daniel was a 2 1/2-year-old child. Dr. Lane did not instruct DOL as to what diagnostic tests to use in the cultures. Although she is familiar with the test normally used for the detection of Neisseria gonorrhea, she does not know the name of the test. Dr. Lane stated that to her knowledge, DOL is a certified laboratory, supervised by a board-certified pathologist, and employing qualified technicians. She assumed that the test had been properly administered. Dr. Lane agreed that it is possible to get a false positive in a culture for Neisseria gonorrhea.

After receiving a report of a positive culture on Daniel's throat for gonorrhea, Dr. Lane telephoned DOL, then telephoned plaintiffs' home, then Komie. Dr. Lane eventually reached the plaintiffs and told Steve that the result of Daniel's throat culture was positive, that Daniel needed to be treated and then recultured, and that she needed to see Daniel as soon as possible. Steve responded that Daniel was out of State and asked Dr. Lane if there was a mistake in the culture. Dr. Lane told Steve that she would reculture Daniel, but that because the test result was positive, she had to report the result to the DCFS hotline. Dr. Lane did not suggest that she would confirm the results of the test prior to reporting it to the hotline. Steve stated that he was "in a lot of trouble" and attempted to dissuade Dr. Lane from calling the DCFS. Dr. Lane wrote a letter to plaintiffs confirming what she told Steve on the telephone; that she would reculture and wanted to treat Daniel, and requesting that they bring him to her office on January 4, 1989.

Later that evening, Komie called Dr. Lane at home and pleaded with her not to call the DCFS. Komie did not inform Dr. Lane that the plaintiffs had discharged him as their attorney earlier that day, on January 3, 1989. Dr. Lane reported the test results to the DCFS hotline at approximately 11 p.m. on January 3, 1989.

Dr. Lane stated that her testimony at the deposition was consistent with her testimony at the January 18, 1989, temporary custody hearing.

Dr. Lane and CMA filed a motion for summary judgment on the following grounds: (1) Dr. Lane is immune from all liability pursuant to the Abused and Neglected Child Reporting Act (325 ILCS 5/9 (West 1994))(Reporting Act); (2) plaintiffs are collaterally estopped from relitigating whether Dr. Lane was an expert in child sexual abuse and from relitigating the accuracy of her testimony at the hearing; (3) plaintiffs cannot attempt to litigate the reason the trial court removed Daniel from custody and whether, but for Dr. Lane's testimony, the ruling would have been different; and (4) plaintiffs waived the right to allege that Dr. Lane's involvement at the hearing caused damage because the plaintiffs, not the State, subpoenaed Dr. Lane to appear at the hearing. Defendants supported their motion by: (1) an affidavit executed by Dr. Lane; (2) the transcript of the temporary custody hearing; and (3) Dr. Lane's discovery deposition.

Following a hearing on defendants' motion for summary judgment, the trial court, Judge Kenneth L. Gillis presiding, granted summary judgment in defendants' favor, finding Dr. Lane immune from liability under the Reporting Act. The trial court found that Dr. Lane did not act in bad faith because she followed the proper procedures in conducting the test on Daniel and in verifying the test result. The trial court determined that Dr. Lane did not in bad faith hold herself out to be an expert. The trial court further found the plaintiffs collaterally estopped from arguing that Dr. Lane was not qualified as an expert at the custody hearing, because Judge Hamilton in fact so qualified Dr. Lane. The trial court further stated that Dr. Lane's involvement in the case came at the behest of the plaintiffs. The trial court did not reach the issue of whether Judge Hamilton's ruling was proper, as the issue "has factual overtones *** inappropriate for a motion for summary judgment." The trial court entered an order granting summary judgment in favor of Dr. Lane and CMA as to all counts of plaintiffs' fifth amended complaint. Plaintiffs' timely appeal followed.

On appeal, plaintiffs contend that the trial court erred in granting summary judgment in favor of Dr. Lane and CMA on the grounds that Dr. Lane is statutorily immune from liability for reporting Daniel's test results to the DCFS. Plaintiffs argue that Dr. Lane demonstrated bad faith with regard to her examination of Daniel and subsequent testimony at the temporary custody hearing.

■ Section 4 of the Abused and Neglected Child Reporting Act (Reporting Act) requires "[a]ny physician *** having reasonable cause to believe a child known to them in their professional or official capacity may be an abused child or a neglected child" to immediately make a report with the DCFS. (325 ILCS 5/4 (West 1992).) Section 9

of the Reporting Act provides immunity from liability to "[a]ny person, institution or agency" who makes a report in good faith. The good faith of the reporter is presumed:

> "For the purpose of any proceedings, civil or criminal, the good faith of any persons required to report *** suspected child abuse or neglect or permitted to refer individuals under this Act, shall be presumed." 325 ILCS 5/9 (West 1992).

■Any such presumption, however, is rebuttable. In Illinois, a rebuttable presumption creates a *prima facie* case of the particular issue involved. (*Lehman v. Stephens* (1986), 148 Ill. App. 3d 538, 551, 499 N.E.2d 103.) In this case, that issue is the good faith of Dr. Lane. It is then incumbent upon the party against whom the presumption operates to come forward with evidence " 'sufficient to support a finding of the nonexistence of the presumed fact.' " (*Lehman*, 148 Ill. App. 3d at 551, quoting *Franciscan Sisters Health Care Corp. v. Dean* (1983), 95 Ill. 2d 452, 463, 448 N.E.2d 872, 877.) Once evidence is introduced contrary to the presumption, the presumption vanishes, and the burden shifts from the plaintiffs to the defendants. On the other hand, if no evidence is introduced to the contrary, then the *prima facie* case created under the presumption will prevail and the defendants would be entitled to judgment as a matter of law.

Plaintiffs argue that Dr. Lane demonstrated bad faith by: (1) allowing attorney Komie to recommend her as an "expert" in the field of sexual abuse of children; (2) undertaking an evaluation of Daniel for sexual abuse for a "substantial fee"; and (3) delaying reporting the "false positive" gonorrhea test result to the DCFS.

In support of their contentions, plaintiffs rely on the allegations of their complaint and an unsigned, unsworn alleged physician's report attached to their complaint, which states that the Phadebact Omni Test allegedly used by DOL to diagnose gonorrhea is inappropriate for identifying sexually abused children and that the accuracy rate of the test is only 91.2%. In addition, plaintiffs rely upon the affidavit of their own counsel, in which he summarizes his recollection of the evidence presented at the full adjudication of wardship hearing. We note that the entire transcript of the full hearing is missing from the record on appeal.

Summary judgment should be granted only where "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (735 ILCS 5/2—1005(c) (West 1992).) Although "the summary judgment procedure is to be encouraged as an aid in the expeditious disposition of a lawsuit [citation], it is a drastic means of disposing of

litigation and therefore should be allowed only when the right of the moving party is clear and free from doubt. [Citations.]" *Purtill v. Hess* (1986), 111 Ill. 2d 229, 240, 489 N.E.2d 867.

The authority relied upon by the plaintiffs is inapposite. *Falk v. Martel* (1991), 210 Ill. App. 3d 557, 569 N.E.2d 248, involved a complaint of battery filed against a DCFS investigator. The DCFS investigator filed a motion to dismiss, claiming that he was entitled to statutory immunity pursuant to section 9 of the Reporting Act. This court held that section 9 of the Reporting Act grants a presumption of good faith only to required and permitted reporters, *i.e.*, physicians, and not to other categories of persons listed in the first sentence of the Reporting Act. Thus, the defendant in *Falk*, who was a DCFS worker *investigating* a report of child abuse, is not entitled to a presumption of good faith. (*Falk*, 210 Ill. App. 3d at 560.) This court concluded:

> "[I]f an allegation of physical abuse by an investigator for DCFS is *not* sufficient to demonstrate a lack of good faith, the immunity provided by section 9 of the Reporting Act becomes nearly absolute." (Emphasis in original.) (*Falk*, 210 Ill. App. 3d at 561.)

Under the circumstances, the court found the plaintiffs' complaint sufficient to preclude "at this stage of the proceedings," application of the good-faith immunity provision of section 9 of the Reporting Act. *Falk*, 210 Ill. App. 3d at 561.

*Kuwik v. Starmark Star Marketing & Administration, Inc.* (1993), 156 Ill. 2d 16, 619 N.E.2d 129, is similarly inapplicable. There, the plaintiff chiropractor filed a defamation claim against an insurance company that sent a series of letters to its insured and wrote memos indicating that the plaintiff was not qualified to perform certain diagnostic tests. Our supreme court determined that summary judgment was not properly entered in favor of the insurance company, where genuine issues as to material facts existed indicating that the defendant may have been reckless in sending the letters and in not conducting a proper investigation into the plaintiff's qualifications. *Kuwik*, 156 Ill. 2d at 31.

■ In the present case, there exist no genuine issues of material fact as to whether Dr. Lane acted in good faith in reporting the test results to the DCFS and in testifying pursuant to plaintiffs' subpoena at the temporary custody hearing. The uncontested facts show that: Dr. Lane followed proper procedures in conducting her examination of Daniel; Dr. Lane in good faith submitted the specimen to a certified laboratory for analysis; once Dr. Lane received the results of the test, she immediately contacted the plaintiffs, informed them that she must report the results to the DCFS, and offered to retest and

treat Daniel; Dr. Lane reported the test results to the DCFS as required by statute after notifying the plaintiffs; Dr. Lane testified at the temporary custody hearing pursuant to plaintiffs' subpoena as to her qualifications and the events surrounding the examination and testing of Daniel; Dr. Lane's deposition testimony is consistent with her trial testimony; and the trial court qualified Dr. Lane as an expert in child sexual abuse.

We therefore find that the plaintiffs have failed to overcome the statutory presumption that Dr. Lane acted in good faith in reporting Daniel's test results to the DCFS.

■ Plaintiffs' further argument that Dr. Lane should not have been qualified as an expert in child sexual abuse at the adjudication of wardship hearing is unavailing. Collateral estoppel bars a party from relitigating issues essential to, and actually or necessarily decided in, a prior proceeding. (*American National Bank & Trust Co. v. Village of Libertyville* (1995), 269 Ill. App. 3d 400, 404, 645 N.E.2d 1013, citing *Powers v. Arachnid, Inc.* (1993), 248 Ill. App. 3d 134.) The record shows that the trial court qualified Dr. Lane as an expert in the adjudication of wardship hearing and that plaintiffs did not object at the hearing or afterwards. Thus, plaintiffs are collaterally estopped from relitigating this issue in this later, collateral lawsuit. We find no support for plaintiffs' contention that they detrimentally relied on attorney Komie's recommendation of Dr. Lane for Daniel's examination. We note that while plaintiffs' complaint alleges a "conspiracy to commit fraud," plaintiffs fail to name Komie as a defendant.

For these reasons, we affirm the judgment of the trial court.

Affirmed.

WOLFSON and BRADEN, JJ., concur.