FIRST DIVISION

September 15, 2003

No. 1-02-1495

EUGENIA LIPSCOMB, Indiv., 

and as Mother and Next Friend of

Nicole Lipscomb, a Minor, 

Plaintiff-Appellant,

v.

SISTERS OF ST. FRANCIS HEALTH SERVICES,

INC., d/b/a St. James Hospital and

Health Center,

Defendant-Appellee. 
 

)))))))))))))

Appeal from the

Circuit Court of

Cook County

01 M6 4215

Hon. Joseph M. Macellaio,

Judge Presiding.

JUSTICE McBRIDE delivered the opinion of the court:

Plaintiff, Eugenia Lipscomb, individually and as mother of Nicole Lipscomb, a minor, filed a five-count complaint against defendant, Sisters of St. Francis Health Services, Inc., d/b/a St. James Hospital and Health Center.  The complaint alleged that defendant wrongfully suspected Nicole had been sexually abused, which resulted in the wrongful investigation and detention of Nicole, and the emotional distress and defamation of plaintiff.  The complaint also alleged that defendant prohibited Nicole from leaving its premises until she had been "cleared and released" by the Illinois Department of Children and Family Services (DCFS). Defendant filed a motion to dismiss all counts of the complaint under section 2-619 of the Illinois Code of Civil Procedure (735 ILCS 5/2-619 (West 2000)), claiming that it was immune from liability under section 9 of the Abused and Neglected Child Reporting Act (Reporting Act) (325 ILCS 5/9 (West 2000)).  Section 9 grants immunity for certain required reporting duties and investigations of abuse under the Reporting Act.  On April 18, 2002, the trial court granted defendant's motion to dismiss with prejudice.  Plaintiff appeals.

We review 
whether the trial court properly granted defendant's motion to dismiss 
de novo
.  
Neppl v. Murphy
, 316 Ill. App. 3d 581, 583, 736 N.E.2d 1174 (2000).
  The following background facts are taken from the complaint and the record.

Nicole Lipscomb, an eight-year-old minor and plaintiff's daughter, was a resident of Cook County, Illinois.  Defendant is a hospital corporation with principal places of business in Chicago Heights and Olympia Fields, Illinois.  On December 23, 2000, plaintiff brought Nicole to the emergency room at defendant's Chicago Heights "campus" for treatment of a fever.  In the emergency room, defendant, through its employees, conducted a variety of laboratory tests on Nicole including a urinalysis.

After the first test, plaintiff was informed that the urinalysis indicated "trace amounts of spermatozoa, moderate bacteria levels, and [pH] of 7.5."  Because of the spermatozoa finding, plaintiff was advised that defendant was required to call the Chicago Heights police and DCFS due to the possibility that the child had been sexually abused.  Immediately thereafter, the Chicago Heights police appeared at the hospital and began to question plaintiff.

When plaintiff learned of the urinalysis results, she insisted that defendant had confused Nicole's test results with those of another patient, and plaintiff requested that a second urinalysis be conducted.  Defendant repeated the urinalysis and the second test revealed, "no spermatozoa present, slight bacteria level, and a [pH] of 6.0."  

Defendant then insisted upon performing a vaginal examination on Nicole.  After the vaginal exam, defendant advised plaintiff that no evidence of abuse was found and that the first urinalysis was misidentified as being Nicole's.  Defendant apologized to plaintiff for the embarrassment, anxiety, and distress caused by its error.

Defendant then informed plaintiff that Nicole's fever could not be treated at the Chicago Heights "campus" and that she would have to be transferred to the "campus" at Olympia Fields.  Nicole was then transferred by ambulance to Olympia Fields, where she was admitted and brought to a room.  Once in the room, plaintiff alleged that defendant's agents began questioning plaintiff and Nicole about child abuse.  Further, plaintiff claimed that defendant's agents insisted on performing multiple and repeated vaginal examinations on Nicole.  Defendant then recontacted DCFS about possible child abuse and informed plaintiff that she would not be permitted to take Nicole home until DCFS consented to her release.

Plaintiff claims that she repeatedly advised defendant's agents at the Olympia Fields campus that personnel at the Chicago Heights campus had recognized their laboratory error, had examined Nicole, and had determined that Nicole had not been sexually abused.  Plaintiff alleged that she encouraged personnel at the Olympia Fields campus to review Nicole's file sent by the Chicago Heights campus to confirm that the first urinalysis indicating the presence of spermatozoa had been misidentified as Nicole's.

Even though Nicole's fever had subsided on December 24, 2000, defendant refused to permit plaintiff to take Nicole home.  On December 25, 2000, plaintiff expressed concern to Dr. Minor that DCFS had not yet contacted her about the allegations of abuse.  The doctor agreed to contact DCFS.  When the DCFS hotline was contacted, a DCFS employee indicated that no record of a case report had been filed, but that the doctor's call on December 25, 2000, would constitute an official report.  Because plaintiff was unwilling to allow Nicole to remain alone at the hospital, plaintiff was forced to stay at the hospital over the Christmas holiday and until December 26, 2000, when Nicole was finally  "cleared and released" by DCFS.

On August 28, 2001, plaintiff filed a five-count complaint against defendant alleging
 false imprisonment (count I), invasion of privacy (count II), battery (count III), intentional infliction of emotional distress (count IV), and defamation (count V).  As we noted above, the trial court dismissed these counts with prejudice on April 18, 2002.  While there is no transcript of the hearing on the motion to dismiss in the record, the parties agree the trial court's basis for dismissing the complaint was that defendant was immune from liability under section 9 of the Reporting Act. 

We now address whether the trial court properly granted defendant's motion to dismiss.  As pointed out above, the standard for reviewing a motion to dismiss granted under section 2-619 is 
 de novo
.  
Neppl
, 316 Ill. App. 3d at 583.  This court has stated: 

"In a section 2-619 motion, all well-pleaded allegations in support of the claim are taken as true and all reasonable inferences are drawn in the plaintiff's favor.  [Citations.]
  
A section 2-619 motion should be granted only if no set of facts can be proven that would support the plaintiff's cause of action.  [Citation.]"  
Nosbaum v. Martini
, 312 Ill. App. 3d 108, 113, 726 N.E.2d 84 (2000).
 

Like a summary judgment motion, the trial court can consider the affidavits and evidence submitted by the parties under section 2-619(c).  
Nosbaum
, 312 Ill. App. 3d at 114.
  Additionally:

"An appeal from such a dismissal is similar to one following a grant of summary judgment.  [Citation.]  'The appellate court must consider whether the existence of a genuine issue of material fact should have precluded the dismissal or, absent such an issue of fact, whether dismissal is proper as a matter of law.'  [Citation.]"  
Nosbaum
, 312 Ill. App. 3d at 114.

    As background, we note that "parents enjoy an inherent right to the care and custody of their own children."  
Lehman v. Stephens
, 148 Ill. App. 3d 538, 547, 499 N.E.2d 103 (1986).  However, "the State, in its recognized role as 
parens patriae
, is the ultimate protector of the rights of minors."  
Lehman
, 148 Ill. App. 3d at 547.  Further:

"The State is substantially interested in providing for [a minor's] health, safety, and welfare, and may properly step in to do so when appropriate. [Citations.] While this 
parens patriae
 interest in promoting the welfare of the child favors preservation, not severance, of natural family bonds [citation], the countervailing State interest in curtailing child abuse is also great.  In cases of suspected abuse or neglect, the State has a clear interest in protecting the child [citation], and may, if necessary, go as far as to separate neglectful parents from their children [citation].  As such, the parents' needs or rights may be considered secondary to the State's strong interest in protecting children where the potential for abuse or neglect exists."  
Lehman
, 148 Ill. App. 3d at 547.

To serve this objective, DCFS has been charged with upholding the State's interest in preventing child abuse or neglect.  
Lehman
, 148 Ill. App. 3d at 547.

Section 4 of the Reporting Act provides that, among others, any physician, hospital, or personnel
 engaged in the examination, care, and treatment of persons, "having reasonable cause to believe a child known to them in their professional or official capacity may be an abused child or a neglected child[,] shall immediately report or cause a report to be made to the Department [DCFS]."  325 ILCS 5/4 (West 2000). 

The definition of "Abused child" in section 3 of the Reporting Act, "means a child whose parent *** commits or allows to be committed any sex offense against such child."  325 ILCS 5/3(c) (West 2000).  

Section 9 of the Reporting Act states, in pertinent part:

"Any person, institution or agency, under this Act, participating in good faith in the making of a report or referral, or in the investigation of such a report or referral *** or in the retaining a child in temporary protective custody *** shall have immunity from any liability, civil criminal or that otherwise might result by reason of such actions.  For the purpose of any proceedings, civil or criminal, the good faith of any persons required to report or refer, or permitted to report, cases of suspected child abuse *** shall be presumed."  325 ILCS 5/9 (West 2000).

Under section 9, defendants are statutorily presumed to have acted in good faith and, therefore, are immune from suit when they 
report
 a case of suspected child abuse or neglect.  
Lehman
, 148 Ill. App. 3d at 551.  However, in 
Lehman
, the court pointed out:

"Any such presumption, however, is rebuttable.  In Illinois, a rebuttable presump
tion creates a 
prima facie
 case of the particular issue involved.  Here, that issue is the good faith of the defendants.  It is then incumbent upon the party against whom the presumption operates to come forward with evidence sufficient to meet the presumption.  [Citation.]  As such, Illinois recognizes the so-called 'bursting bubble' theory regarding presumptions: once evidence is introduced contrary to the presumption, the bubble bursts and the presumption vanishes.  [Citations.] The party intending to rebut the presumption must come forward with evidence ' "sufficient to support a finding of the nonexistence of the presumed fact." '  [Citation.]  Should this be the case, the presumption would cease to operate, and the issue in dispute would be determined as if no presumption ever existed.  [Citation.]  Only then, with the presumption met, would the burden here shift from the plaintiffs to the defendants.  On the other hand, if no evidence is introduced to the contrary, then the 
prima facie
 case created under the presumption will prevail, and the defendants would be entitled to judgment as a matter of law."  
Lehman
, 148 Ill. App. 3d at 551.      

We must therefore determine whether defendant's conduct amounted to a "reporting" under section 9 of the Reporting Act.  If so, good faith is presumed, thus triggering the statutory immunity afforded under section 9.  If the acts are not "reporting," there is no presumption of good faith.  However, immunity is still afforded a defendant if it "participat[ed] in good faith *** in the investigation of such a report or referral" under the Reporting Act.  325 ILCS 5/9 (West 2000).  

Plaintiff concedes that defendant's conduct at the Chicago Heights campus amounted to a reporting, but asserts that defendant's conduct at the Olympia Fields campus was not reporting. Instead, plaintiff argues defendant's conduct at Olympia Fields was an investigation, an activity that is not afforded a presumption of good faith under section 9 of the Reporting Act.  Additionally, plaintiff contends that the actions of defendant at Olympia Fields were not taken in good faith and that, at this stage of the proceedings, it was improper for the trial court to grant defendant immunity as a matter of law.  In response, defendant argues that the trial court properly granted its motion to dismiss because all of its conduct was proper "reporting" under section 9 of the Reporting Act and that all its actions were "cloaked" with the presumption of good faith.  Defendant also claims that the allegations in plaintiff's complaint fail to rebut the presumption of good faith established in section 9.

As pointed out earlier, in 
Lehman
, the appellate court, after reviewing section 9 of the Reporting Act, concluded that "good faith is only presumed as to 'reporters' under [section 9 of] the Act."  
Lehman
, 148 Ill. App. 3d at 551.
  

Further, in 
Falk v. Martel
, 210 Ill. App. 3d 557, 560, 569 N.E.2d 248 (1991), the appellate court found that a DCFS worker who was investigating a report of child abuse was not entitled to a presumption of good faith.  In 
Falk
, the plaintiff and her minor daughter filed a five-count complaint against the defendant, a DCFS investigator.  The allegations arose out an investigation by the defendant concerning a report of suspected child abuse involving the plaintiffs.  Count V of the complaint was removed to federal court and dismissed, but the remaining counts were remanded to the state trial court.  Counts I alleged the defendant committed a battery upon the minor daughter by pinching her buttocks, shoulder, and back.  Count II alleged that the defendant committed a battery on the plaintiff mother by grabbing her by the shoulder and throwing her onto a bed.  Counts III an IV alleged that the defendant caused severe emotional distress by verbally abusing and humiliating the plaintiffs.

The defendant filed a section 2-619 motion to dismiss the complaint on the ground that he was entitled to statutory immunity under section 9 of the Reporting Act.  In an affidavit filed with the defendant's motion to dismiss, the defendant denied forcibly entering the plaintiff's residence and assaulting them.  He further stated that every act he performed while at the plaintiffs' residence was necessary to conduct his investigation.  The trial court granted the defendant's motion finding that he was entitled to immunity under section 9.  

On review, the appellate court, citing 
Lehman
, 148 Ill. App. 3d at 551, noted that while the first part of section 9 grants immunity to those acting in good faith under the Reporting Act, the second sentence grants a presumption of good faith only to required and permitted reporters, and not to other categories of persons mentioned in the first sentence.  
Falk
, 210 Ill. App. 3d at 560.  The court therefore concluded that the defendant, who was investigating a report of child abuse, was not entitled to the presumption of good faith.  
Falk
, 210 Ill. App. 3d at 560.  Without the presumption, the court concluded that counts I and II of plaintiffs' complaint were sufficient to withstand the motion to dismiss.  
Falk
, 210 Ill. App. 3d at 560-61.

Based on our review of the entire record, we conclude that material questions of fact exist as to whether defendant's actions at Olympia Fields went beyond reporting and fell into the category of investigation, where good faith is not presumed under section 9 of the Reporting Act.  Assuming 
arguendo
 that the acts complained of were "reporting," the allegations in the complaint, if taken as true along with plaintiff's affidavit, raise questions of fact so as to rebut any presumption of good faith at this stage of the proceedings.  Whether plaintiff will eventually prevail is not the issue here, but whether the allegations can withstand the motion to dismiss.  
Falk
, 210 Ill. App. 3d at 560-61.  We find that they do.

Here, Nicole was brought to the emergency room at defendant's Chicago Heights campus for treatment of a fever.  As part of the tests conducted relative to the treatment of Nicole's fever, a urinalysis was taken.  After defendant conducted this urinalysis, defendant suspected child abuse due to trace amounts of spermatozoa in Nicole's urine.  The defendant then contacted DCFS and the police department.  The complaint alleges that the police arrived and began to question plaintiff even before she was aware of the urinalysis results. 

Upon learning the results, plaintiff insisted that there had been a mistake, that the test results were someone else's, and that defendant should conduct an additional urinalysis.  The second urinalysis revealed no spermatozoa present.  Defendant then conducted the first vaginal exam on Nicole, which indicated that no abuse occurred.  According to the complaint, defendant concluded that there was no evidence of abuse and that the first urinalysis was obviously misidentified as being Nicole's.  The allegations further claimed that defendant apologized to plaintiff for the embarrassment, anxiety, and distress caused by defendant's errors.

Plaintiff was then advised that Nicole could not be treated at the Chicago Heights campus, so she was transferred to defendant's campus in Olympia Fields.  There, plaintiff and Nicole were questioned by defendant's agents concerning child abuse and multiple vaginal examinations were again conducted upon Nicole.  The complaint also alleged that defendant recontacted DCFS about possible child abuse.  The record also suggests that on December 23, 2000, defendant contacted DCFS but that DCFS made no official report until defendant called DCFS again on December 25, 2000.  Nicole was not allowed to leave the defendant's Olympia Fields campus until December 26, 2000, when she was cleared and released by DCFS.

At Olympia Fields, plaintiff and Nicole, outside the presence of DCFS, were subjected to additional questioning and Nicole was subjected to multiple vaginal examinations even though at that point there was no evidence of sexual abuse.  While we are aware that reporters are presumed to be acting in good faith and are granted immunity under section 9 of the Reporting Act, we find that questions of fact have been raised as to whether the conduct alleged by plaintiff at Olympia Fields exceeded reporting and became investigating, which does not enjoy the presumption of good faith.  We also find questions of fact exist as to whether these actions were taken in good faith when the second urinalysis and vaginal exam at Chicago Heights had already revealed no evidence of sexual abuse.  Further, according to the complaint, defendant admitted its erroneous urinalysis in the first instance and apologized for the embarrassment, anxiety, and distress it caused plaintiff.  Thereafter, defendant initiated new questioning and a battery of physical exams, which, it can at least be inferred, were conducted without any good-faith basis because the hospital at that time had clear evidence of no sexual abuse.  Under the Reporting Act, reporting is required when hospital personnel have "reasonable cause to believe a child known to them in their professional or official capacity may be an abused child."  325 ILCS 5/4 (West 2000).  We find the allegations suggest defendant  did not have "reasonable cause
 to believe" Nicole may have been an abused child and raised questions of fact regarding defendant's good faith.

Based on the appellate court decision in 
Pryweller v. Cohen
, 282 Ill. App. 3d 899, 668 N.E.2d 1144 (1996), and section 7 of the Reporting Act (325 ILCS 5/7 (West 2000)), defendant claims that the reporting process may be an "on-going one" where "the child is in a hospital for several days being treated for an unrelated condition."  Thus, defendant claims that the reporting process began at the Chicago Heights campus and continued after Nicole was transferred to Olympia Fields.  Defendant also argues that the performance of the vaginal examinations on Nicole or the questioning of plaintiff in regard to the suspected abuse "were not unreasonable in light of the original urinalysis findings."  But as we noted above, the second urinalysis and first vaginal exam at Chicago Heights indicated that no sexual abuse occurred.  It also appears that DCFS never even conducted an investigation of abuse in this case.  Thus, plaintiff's allegations in regard to defendant's subsequent conduct at Olympia Fields raise questions of fact as to whether the presumption has been rebutted, the bubble burst, and the presumption vanished.  
Lehman
, 148 Ill. App. 3d at 551.   

In 
Pryweller
, the plaintiff alleged that his ex-wife falsely accused him of sexually abusing their daughter.  Because of this allegation, the plaintiff's ex-wife and children came into contact with defendant Cohen of Human Effective Living Programs (HELP), a DCFS subcontractor.  Cohen determined that the plaintiff had sexually abused his daughter and reported the finding to DCFS, which made a preliminary determination that sexual abuse was indicated.  The circuit court then terminated the plaintiff's contact with his children based on Cohen's determination of abuse.  

Later, however, doctors at Mount Sinai Hospital examined the children and found that there was no evidence of sexual abuse.  As a result, the circuit court granted the plaintiff visitation rights.  Thereafter, the defendants, all employees of HELP, treated the plaintiff and his children at HELP.  The plaintiff conditioned his participation in the treatment upon the defendants' agreement that he did not sexually abuse his daughter.  Despite the defendants' representations that no sexual abuse had occurred, they continued to provide DCFS reports indicating that the plaintiff had sexually abused his daughter and continued to treat the plaintiff's children as though the abuse had occurred.  The treatments resulted in the children's substantial and potentially irreversible hatred of the plaintiff.   Ultimately, DCFS reversed its finding that sexual abuse was indicated and expunged the accusation from its files.  The circuit court then entered an agreed order which concluded that there was no sexual abuse in the first instance.  The plaintiff then filed an action against Cohen and the other defendants alleging that they improperly diagnosed sexual abuse and improperly treated the plaintiff and his children.

The defendants moved to dismiss the complaint under section 2-619 of the Illinois Code of Civil Procedure on the basis that they  were immune under the Reporting Act from liability for the participation, reporting, or investigation of the charge against the plaintiff.  The trial court dismissed the plaintiff's claims with prejudice.

Among other things, the plaintiff argued that the trial court erred in granting the defendants' motions under section 2-619 because a question of fact existed as to whether the defendants acted in good faith and were therefore immune under section 9 of the Reporting Act.  The appellate court noted that "presumption of good faith under this section applies only to those reporting child abuse under the Reporting Act and not to those performing the other functions listed in section 9 of the Reporting Act."  
Pryweller
, 282 Ill. App. 3d at 908.

On appeal, the plaintiff also argued that the presumption of good faith only applied to the initial report under the Reporting Act, that Cohen made the initial report, and that the other defendants who participated in subsequent reports were not entitled to the presumption of good faith and the immunity flowing therefrom.  The appellate court found that defendant Cohen was entitled to the presumption of good faith because the plaintiff failed to show any facts to the contrary.  
Pryweller
, 282 Ill. App. 3d at 910.  With regard to the reporting activities of the other defendants, the court concluded that the presumption should be applied to them on the ground that they were "downstream evaluators."  Specifically, the court found, "[o]ur reading of the Reporting Act as a whole indicates that the word 'report' in section 9 is not limited to the initial report of abuse."  
Pryweller
, 282 Ill. App. 3d at 911.
  

Defendant concludes that 
Pryweller
 makes clear that, not only the initial report, but subsequent actions, can be considered part of the reporting process under section 9 of the Reporting Act.
  
We find 
Pryweller
 distinguishable from the instant case.  In 
Pryweller
, the court made clear that the reporting activities of downstream evaluators were afforded immunity because "the word 'report' in section 9 [was] not limited to the initial report of abuse."  
Pryweller
, 282 Ill. App. 3d at 911.  Further, it was at least arguable, based upon Cohen's report in 
Pryweller
, that a possibility of abuse existed in that case.  

Here, other than defendant's admitted mistake concerning the first misidentified urinalysis, there was no evidence that sexual abuse occurred.  As we made clear above, questions of fact exist as to whether defendant's conduct in this case crossed over from reporting, which occurred at the Chicago Heights campus, to an investigation of sexual abuse that resulted in multiple vaginal examinations on Nicole at the Olympia Fields campus.  Nicole was brought to defendant to treat a fever and in connection with that treatment she was given a urinalysis that indicated a trace amount of spermatozoa.  After a second urinalysis and vaginal examination showing no evidence of sexual abuse, defendant conceded that the first urinalysis was not Nicole's and that a mistake had been made.  Nevertheless, after apologizing to plaintiff and Nicole and conceding that a mistake had been made, defendant continued to investigate the existence of potential sexual abuse at the Olympia Fields campus by performing multiple vaginal examinations on Nicole.  Significantly, there is no evidence that any of these exams indicated any sexual abuse.  It also appears that Nicole was released from Olympia Fields on December 26, 2000, without any investigation ever being conducted by DCFS, the agency actually charged with investigating allegations of abuse under the Reporting Act.  See 325 ILCS 5/7.3 (West 2000).  The conduct here is not similar to the reporting activities conducted by the defendants in 
Pryweller
.  

In any event, even if defendant's actions were considered  "reporting" under section 9, we find that the allegations in plaintiff's complaint would, at this stage of the proceedings, rebut any presumption that defendant acted in good faith.  Defendant has not supported its claim of acting in good faith with an affidavit or any other supporting materials.  In fact, defendant did not provide the trial court with any documents or other evidence to suggest that "multiple vaginal examinations" would be reasonable after admitting an erroneous test result, having other clear evidence of no abuse, and apologizing for the error that had occurred.  The only affidavit filed in this case was sworn to by the plaintiff.

Defendant relies on 
Doe v. Winny
, 327 Ill. App. 3d 668, 683, 764 N.E.2d 143 (2002), for the proposition that "the evidence of negligence, standing alone, is insufficient to create a question of fact as to whether an individual acted with good faith as required by [section 9] of the Act."  The decision further states that, "[t]o raise a question of fact, the plaintiff must show that the reporter has acted maliciously, dishonestly, or for some improper purpose."  
Doe
, 327 Ill. App. 3d at 683. 
 
Doe
 also recognized, however, that "an individual does not act with good faith under [section 9 of] the Act when he acts with actual malice, violates the provisions of the Act, or makes a report of abuse when there is no reasonable basis for such a report and the evidence suggests that the report was made for malicious purposes. [Citations.]"  
Doe
, 327 Ill. App. 3d at 682.

Here, in count I of the complaint, plaintiff alleged that defendant knowingly and intentionally falsely imprisoned Nicole against plaintiff's consent and will.  It further alleged that defendant willfully and wantonly disregarded plaintiff's rights.  Count II alleged that defendant knowingly and intentionally invaded Nicole's privacy by conducting multiple vaginal examinations.  Count IV alleged that defendant intentionally inflicted emotional distress upon plaintiff and that plaintiff's emotional problems were caused by the knowing and intentional conduct of the defendant.  Finally, count V alleged that defendant made knowing and intentional statements which defamed plaintiff in the community.  While these allegations are conclusory, they are supported by specific facts pointed out earlier which rise above asserting mere negligence.  They suggest that there was no reasonable basis for a report and investigation in the first instance.  If taken as true, they also suggest that the report/investigation was made for a malicious purpose.  At this stage, they are sufficient to rebut the presumption that defendant acted in good faith under section 9 of the Reporting Act.

Defendant also relies upon 
Poulos v. Lane
, 276 Ill. App. 3d 524, 659 N.E.2d 34 (1995), where, according to defendant, "[f]acts sufficient to demonstrate bad faith were found lacking."  In 
Poulos
, a DCFS social worker informed the plaintiffs, Steve and Katherine Poulos, who were husband and wife, that a former foster child had made allegations that, when he lived with the plaintiffs, Steve Poulos had sexually abused him.  DCFS then advised the plaintiffs that their own two-year old child, Daniel, would have to be evaluated for sexual abuse.  The plaintiffs retained an attorney who recommended that Daniel be taken to Dr. Lynda Lane, whom the attorney claimed was an expert in the field of child abuse.

Dr. Lane conducted a physical examination of Daniel by taking cultures from Daniel's rectum, throat, and penis.  The cultures were then delivered to the laboratory for evaluation.  In the interim, Dr. Lane drafted a report which stated that Daniel showed no signs of sexual abuse.  Subsequently, the lab reports came back indicating that Daniel's throat tested positive for gonorrhea.  When Dr. Lane learned of the report, she informed the plaintiff's attorney.  She also informed Steve Poulos and wrote a letter to the plaintiffs indicating that she intended to confirm the test result and that she would treat Daniel if the retest was positive.  At that time, she reported the test result to the DCFS child abuse hotline.   Based on Lane's confirmed diagnosis that Daniel had gonorrhea and Lane's testimony at a temporary custody hearing, the trial court ordered Daniel removed from his parents.

After 11 months in foster care, the court returned Daniel to the custody of the plaintiffs.  Thereafter, the plaintiffs filed suit against Dr. Lane and other defendants for negligence, conspiracy to commit fraud, fraud, and breach of contract.  Dr. Lane filed a motion for summary judgment contending that she was immune from liability under section 9 of the Reporting Act.  The trial court granted Lane's motion for summary judgment.

On appeal, the primary issue was whether Dr. Lane acted in good faith.  The plaintiffs asserted that Dr. Lane demonstrated bad faith by: (1) allowing an attorney to recommend her as an expert in the field of sexual abuse of children; (2) undertaking an evaluation of Daniel for a substantial fee; and (3) delaying the reporting of the false positive gonorrhea test result to DCFS.

The appellate court, after examining the record, found that no genuine issue of material fact existed as to whether Dr. Lane acted in good faith because she followed the proper procedures in conducting her examination of Daniel; submitting the test results to the lab; and reporting the results to the DCFS after notifying the plaintiffs.  As a result, the court found that the plaintiff had failed to overcome the statutory presumption that Dr. Lane acted in good faith by reporting Daniel's test results to DCFS.  
Poulos
, 276 Ill. App. 3d at 532.

Poulos
 is distinguishable from the instant case.  First, in 
Poulos
, there was an actual report of child abuse from DCFS as opposed to the instant case where Nicole was brought in for treatment of a fever.  Second, the test conducted by Dr. Lane actually revealed the presence of gonorrhea in Daniel's throat. 

Here, defendant conducted a urinalysis on Nicole which revealed only a trace amount of spermatozoa.  Defendant then  conducted a second urinalysis and a vaginal exam on Nicole which resulted in defendant's determination that no sexual abuse had occurred.  Defendant apologized to plaintiff and concluded that the first urinalysis had been misidentified as Nicole's.  Despite the apology and apparent confusion in test results, defendant, at Olympia Fields,
 subjected Nicole to further questioning regarding sexual abuse, repeated vaginal examinations, and confinement until DCFS finally released her three days later.  Aside from the first urinalysis which was misidentified as Nicole's, none of defendant's questioning or examinations demonstrated any evidence that Nicole had been sexually abused.  As a result, we do not find 
Poulos
 analogous to the instant case.

For all of the reasons above, we find that, as pled, the actions taken by defendant at Olympia Fields were not reporting, but amounted to an investigation, and therefore not entitled to a presumption of good faith.  Additionally, even if defendant's actions at Olympia Fields were considered reporting, material questions of fact exist as to whether the presumption vanished and defendant acted in good faith.  Accordingly, we conclude the trial court's order granting defendant's motion to dismiss was improper.  Because of our finding that the complaint was improperly dismissed, we need not address plaintiff's additional arguments as to why immunity should not be extended to defendant's conduct at this stage of the proceedings.

The order of the trial court is reversed.  

Reversed. 

CAHILL and GARCIA, JJ., concur.